### WATKINS v LINVER et

Ohio Appeals, 6th Dist, Lucas Co

No 2789. Decided Nov 20, 1933

Tracy, Chapman & Welles, Toledo, for plaintiff in error.

A. M. Steinberg, Toledo, for defendants in error.

## OPINION

### By LLOYD, J.

It is claimed that the verdict and judgment are manifestly against the weight of the evidence, that counsel for defendant in error was guilty of misconduct in the manner of his cross-examination of one witness and his direct examination of another, and that the court erred in its general charge to the jury.

At the time of the collision one of the witnesses was standing on the sidewalk on the southerly side of Monroe Street and the westerly side of Michigan Street, waiting for the green light to flash permitting him to cross to the northerly side of Monroe Street. Being present at the trial, his deposition, taken previously thereto, was not used. The following occurred during his cross-examination:

"Q. Then you didn't see the accident? A. I did see the accident.

Q. Did you see cars in front of you? A. I did see cars go in front of me.

Mr. Boxell: I think he has testified six or eight times he didn't see her car and know it was her car. I think it is wasting time and object for that reason.

The Court: I think he has testified to that.

Mr. Steinberg: I don't know. He has contradicted his testimony in the deposition.

Mr. Boxell: I ask the last remark about contradiction be stricken. I object to it. All counsel has to do is to pay attention.

The Court: Now proceed, if you have anything further.

Mr. Boxell: Exception."

On direct examination by his counsel, Harry Linver, one of the defendants in error, was questioned as to a conversation claimed to have been had by him with another witness testifying in behalf of Watkins, as follows:

"Q. And what was the extent of your conversation with Mr. Carlson; did you ask him some questions? A. Asked him some questions, what he knew about that.

Mr. Boxell: We object.

The Court: Yes, there was no foundation laid for that, was there? That is for impeachment purposes, isn't it?

Mr. Steinberg: Yes, discredit any testimony of Mr. Carlson's.

The Court: The objection is well taken.

Q. Did Mr. Carlson tell you that he did not know anything?

Mr. Boxell: Now I do object to that.

Mr. Steinberg: Withdraw that question.

Q. Did you speak to Mr. Carlson concerning this accident, Mr. Linver?

Mr. Boxell: I might say we object to his whole line unless there is some relevancy shown for it.

The Court: No, you laid no foundation for this.

Mr. Steinberg: We want to show Carlson made statements to this witness contradictory to his testimony here.

The Court: Yes, that may be true, but you know how to do that.

Mr. Boxell: We object to the statement, it's improper.

Mr. Steinberg: Mr. Linver does not know Carlson personally and the only time he met him was at the time he went up to his residence, and we want to bring in just what was said there.

The Court: The objection is well taken.

Q. You heard Mr. Carlson testify on the stand here? A. I did.

Q. What? A. I did.

Mr. Boxell: Then a further objection on that score.

Q. You heard Mr. Carlson's story on the stand?

Mr. Boxell: I object to anything further of this kind.

The Court: Yes, that is objectionable."

The method of examination thus adopted and persisted in by counsel was clearly improper and reprehensible, and can be excused only on the supposition that counsel did not appreciate its impropriety nor understand that witnesses can not be impeached in the manner in which he was attempting to proceed, and that when the court had once ruled on the subject, comment thereon in the presence of the jury should cease. What is intimated as being an existing fact arouses in the mind of the average juror a curiosity to know what the fact is and a suspicion that something is concealed which the jurors are entitled to know, and the impression thus created is likely to remain unless the court or offending counsel promptly and effectively disabuses their minds of such erroneous belief. This thought is aptly expressed in Scripps v Reilly, 38 Michigan, 10, 15, in this language:

"An impression once made upon the mind of a juror, no matter how, will have more or less influence upon him when he retires to deliberate upon the verdict to be given, and no matter how honest or conscientious he may be, or how carefully he may have been instructed by the court to not permit such incompetent matters to influence him, or have any bearing in the case, it will be very difficult, if not impossible, for him to separate the competent from the incompetent, or to say to what extent his impressions or convictions may be attributed to that which properly should not have been permitted to come to his knowledge."

In the instant case, the quality and quantity of the evidence produced by the respective parties at the trial is so evenly balanced that it is not unlikely, and we think probable, that the foregoing colloquy relative to what counsel claimed, left its imprint on the minds of the jurors and affected their determination as to the verdict.

It is claimed that the general charge of the court as contained in the bill of exceptions differs materially from the transcript thereof as prepared by the court reporter, the particular point registered by counsel being as to what was said to the jury on the subject of proximate cause. This court assumes, and has no reason to conclude otherwise, that the charge of the court was as contained and presented in the bill of exceptions. We find nothing in the instruction of the court as to the meaning of the phrase "proximate cause" prejudicial to plaintiff in error.

Counsel for plaintiff in error say in their brief that

"Although the court refers to the sole negligence of the driver of plaintiff's car in one instance only, it nowhere defined that term to the jury. The jury undoubtedly believed that it meant any negligence at all, irrespective of defendant's negligence."

We do not believe that the jurors were so obtuse and ignorant as not to know the meaning of the word "sole." If counsel thought so, it would not have been overly difficult to have requested the court to define it.

In his general charge, the court says:

"Now, in considering this case it will be necessary for you to consider the driver of plaintiff's car, and before argument I gave you certain instructions in that behalf, and I will not repeat those instructions at this time, but it is proper that I call your attention to a claim made by the defendants in that behalf and that I do at this time. The defendants charge in their answer that this accident was caused by the sole negligence of the driver of plaintiff's car. I charge you that if you should find from the evidence that the driver of plaintiff's car was negligent and that such negligence was the sole cause of this accident and the damages sustained by plaintiff, then, of course, the plaintiff can not recover in this action, and in such event your verdict should be for the defendants. The other instructions, as I say, with reference to that matter were given you before argument and I will not repeat them at this particular time, but those instructions shall guide you in the matters covered by them."

That part of the instruction given to the jury before argument referred to by the court, reads as follows:

"If you find from a preponderance of the evidence that at the time of the collision plaintiff's automobile was being operated by plaintiff's wife for her business or pleasure, with the consent and knowledge of plaintiff and not at the direction of the plaintiff or for his business or purposes, you are instructed that under such circum-

stances plaintiff's wife would occupy the position of a borrower of plaintiff's automobile and plaintiff would not be chargeable with any want of care upon the part of his wife which may have contributed to said collision. If you further find from a preponderance of the evidence that the defendants in the operation of the automobile truck which collided with plaintiff's automobile were guilty of want of ordinary care which was the proximate cause of damage to plaintiff's automobile, your verdict should be for the plaintiff."

If it was intended by this pre-argument instruction to say to the jury that if you find that both Mrs. Watkins and the driver of the truck were concurrently negligent and that their combined negligence was the proximate cause of the collision and of damage to Watkins automobile, then your verdict should be in favor of the plaintiff in error, then the instruction was not couched in such language as clearly to be so understood. It would require more careful scrutiny than the average juror would give, to discover such included meaning, and counsel presenting the instruction are quite as much responsible as the court, for the omission. But under the peculiar facts of the instant case, an instruction in appropriate language to this effect should have been given, and its omission was prejudicial error.

The judgment therefore is reversed for the reasons above given and also because the verdict is manifestly against the weight of the evidence.

Reversed and remanded.

RICHARDS and WILLIAMS, JJ, concur.